IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.

$68,790.00 IN UNITED STATES CURRENCY,

      Defendant-in-rem.

Civ. No. 18-561

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Plaintiff, United States of America, brings this complaint in accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action to forfeit and condemn to the use and benefit of the United States of America property involved in violations of the Controlled Substances Act and 18 U.S.C. § 1952 that is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. 981(a)(1)(C).

### DEFENDANT *IN REM*

2. The defendant *in rem* consists of the following:

   i. Sixty-eight thousand seven hundred ninety dollars ($68,790.00) in United States Currency,
   ii. (hereafter referred to as "Defendant Currency").

3. The Defendant Currency was seized by the Drug Enforcement Administration on February 5, 2018, in the District of New Mexico.

4. The Defendant Currency is now, and during the pendency of this action will be, in the jurisdiction of this Court.

## JURISDICTION AND VENUE

5. The United States District Court for the District of New Mexico has subject matter jurisdiction under 28 U.S.C. §§ 1345, 1355(a) and 1356.

6. Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this district and the property is found in this district. Upon the filing of this complaint, the Defendant Currency will be arrested by execution of a Warrant for Arrest *In Rem* in the District of New Mexico.

## FACTS

7. On February 5, 2018, Drug Enforcement Administration (DEA) Special Agent Jarrell Perry reviewed an Amtrak train passenger name record (PNR) in the name of Heather Stewart, reflecting one-way travel from Chicago, Illinois to Los Angeles, California. A ticket was paid for with $926.00 on a Visa card at the Chicago, Illinois Amtrak train ticket counterruary 4, 2018 at 12:13 p.m. for travel on Amtrak train number three. The Amtrak train number three was scheduled to depart Chicago, Illinois at 3:00 p.m. The PNR reflected travel in sleeper car number 340, bedroom number 18 and did not list a contact telephone number.

8. On February 5, 2018, Agent Perry and TFO Seth Chavez were at the Amtrak train station in Albuquerque, New Mexico to check the westbound Amtrak train number three during its normal layover in Albuquerque. Agent Perry boarded sleeper car number 340. As he walked to bedroom number 18, Agent Perry observed a female, later identified as Heather Stewart, walking in hallway towards him. Agent Perry said, "How are you doing Ma'am?" Stewart said, "Hi."

9. Agent Perry displayed his DEA badge to Stewart and identified himself as a police officer. Agent Perry informed Stewart that the Amtrak train is checked for security reasons. Stewart said, "O.K." Agent Perry asked Stewart for permission to speak with her and

Stewart said, "Sure." Agent Perry asked Stewart if she had her train ticket with her. Stewart said, "yeah." Stewart began to search through her purse. Agent Perry asked Stewart where she was traveling to and Stewart said, "Los Angeles." Agent Perry asked Stewart where she began her trip and Stewart said, "Chicago." Agent Perry asked Stewart if she lived in Chicago or Los Angeles and Stewart said, "I live in LA, outside of LA." Stewart handed Agent Perry an Amtrak train ticket in the name of Heather Stewart. Agent Perry reviewed the Amtrak train ticket and immediately returned it to Stewart.

10. Agent Perry asked Stewart how she liked the Amtrak train and Stewart said, "it's pretty cool." Agent Perry asked Stewart if she had identification with her and Stewart said, "Yeah." Agent Perry asked Stewart for permission to see her identification and Stewart began to search through her purse. Agent Perry explained to Stewart that Amtrak does not have security and that the train is checked in Albuquerque due to the lack of security. Stewart said that she noticed the lack of security and that she had traveled from New York to Chicago on one other occasion. Stewart handed Agent Perry a California identification card in the name of Heather Mary Stewart. Agent Perry reviewed the identification and immediately returned it to Stewart.

11. Agent Perry explained in more detail the reasons that he was speaking with her about the lack of security on the Amtrak train. Agent Perry asked Stewart if she had any luggage with her on the train and Stewart said, "Yeah, in my sleeper." Agent Perry asked Stewart if she had any luggage downstairs or checked in and Stewart said no. Agent Perry asked Stewart how many bags she had with her and Stewart said, "Two." Agent Perry asked Stewart if she had any weapons or anything illegal with her and Stewart said, "No, nothing like that." Agent Perry asked Stewart if she could show Agent Perry her luggage and Stewart said, "Yeah, if you want to look at it." Stewart walked down the hallway to bedroom number eighteen, opened the sliding glass door and entered the bedroom.

12. Agent Perry asked Stewart how long she was in Chicago and Stewart said, "Oh, just a couple days." Agent Perry asked Stewart if she traveled via the train when she traveled to Chicago and Stewart said, "oh-huh, no, no, no, I didn't take the train, I'm sorry, I don't know what I was thinking about, no I didn't take the train out, I flew out." Agent Perry knew from his experience that passengers traveling by airline one way, staying for a few days, then returning via the Amtrak train is a common method of travel used by passengers transporting either illegal narcotics or the cash proceeds from illegal narcotics.

13. Stewart identified two pieces of luggage inside of her bedroom. One was a small tote type bag and the other was a suitcase that she had placed underneath the seat. Stewart removed the suitcase from underneath of the seat and placed it in the floor area between the seats. Agent Perry asked Stewart if she would consent for a search of her bags for contraband and Stewart said, "Well, I could consent, it's kind of pointless. How many bags have you searched since you got on the plane?" Steward said that she didn't have anything anyway and asked if Agent Perry wanted to look through them. Agent Perry said yes. Stewart unzipped her small tote bag revealing the contents to Agent Perry. Agent Perry asked Stewart if she could open up the suitcase and Stewart said, "Sure." Stewart unzipped the suitcase revealing the contents to Agent Perry and handed the suitcase to Agent Perry. Agent Perry asked Stewart for permission for Agent Perry to remove clothing from inside of the suitcase and Stewart said yes. Agent Perry did not observe any type of contraband.

14. Stewart said that she worked as a floral designer and painter in California. Stewart said that she was on vacation in Chicago visiting. Agent Perry asked Stewart if she would consent for a search of her room as well and Stewart said, "No, I think that's enough, sorry, don't you think? Well, you could but it ..." Agent Perry explained that sometimes people have luggage inside of their bedroom and tell Agent Perry that they have no other luggage. Agent Perry asked

4

Stewart if she had any other bags in her room and Stewart quickly replied no. Agent Perry observed that Stewart spoke very quickly to Agent Perry and was nervous when answering questions. Agent Perry believed from his experience that due to Stewart's nervousness and travel patterns that Stewart possibly could have another form of luggage inside of her bedroom.

15. Agent Perry ended the conversation with Stewart and Stewart walked off of the Amtrak train onto the upper platform area. Agent Perry spoke with other passengers on the Amtrak train. Stewart approached Agent Perry and asked Agent Perry to see his identification again. Agent Perry showed Stewart his identification and informed Stewart that when he was finished speaking with passengers he would speak with Stewart. Agent Perry approached Stewart and asked Stewart if she had more questions for him. Stewart said that she just wanted to see Agent Perry's identification. Agent Perry informed Stewart that he had observed that she was nervous and asked Stewart why she was nervous. Stewart said, "I don't think I am nervous." Stewart said that she purchased her train ticket and that she purchased it at the train station in Chicago. Stewart asked why these questions were important. Agent Perry informed Stewart that he was asking more questions due to her extreme nervousness earlier and her travel methods.

16. Stewart said that she cooperated with everything. Agent Perry informed Stewart that she did not allow Agent Perry to search her room to confirm that there was nothing illegal inside. Agent Perry also informed Stewart that Agent Perry believed that Stewart had another form of individual luggage inside of her bedroom. Agent Perry asked Stewart if she had another inside of her bedroom and Stewart said, "Yeah, I have another bag." Agent Perry asked Stewart if she had anything illegal inside the bag in her room and Stewart said, "No." Agent Perry asked Stewart if she could show Agent Perry the other bag in her room and Stewart said, "Yeah."

17. Stewart re-boarded sleeper car number 340, and entered bedroom number 18. Stewart removed the original suitcase that she had identified from underneath of the seat, then

removed a different maroon colored, hard-sided suitcase from underneath of the seat. Stewart spoke to Agent Perry about her travel and Agent Perry observed that Stewart's voice was quivering when speaking and that her hands were visibly shaking when removing the suitcase from underneath of the seat. Stewart unzipped the suitcase which revealed a large gift-wrapped package and several rectangular shaped bundles in tissue paper which were the size of large bundles of money. Agent Perry asked Stewart what was inside of the package and tissue paper. Stewart said that they were gifts. Agent Perry asked Stewart if it was money and Stewart said, "It's a gift, I wouldn't know." Stewart said that it was a gift for her and asked Agent Perry if money was illegal. Agent Perry informed Stewart that money was not illegal. Stewart admitted that the tissue paper contained money and that the large package also contained money. Stewart said that she did not know how much money she had with her in the packages.

18. Agent Perry asked Stewart who had given her the money and Stewart asked why does that matter. Agent Perry informed Stewart that it mattered because if all of the tissue paper and large package contained money, it was a large sum of money to be transporting on the Amtrak train. Agent Perry informed Stewart that there are laws concerning transporting large sums of money and that Agent Perry was attempting to confirm Stewart's story about the money that she had in her possession. Stewart said that her friend gave her the money, but her friend did not have a name. Stewart said that this looked like it was turning into something that she did not want to get anyone else involved in. Agent Perry informed Stewart that she did not have to answer anymore questions about the money if she did not wish to.

19. Agent Perry asked Stewart to provide Agent Perry with her identification and Stewart gave it to him. Stewart said that she was going to go inside her room and would get back to Agent Perry after he completed speaking with other passengers. Stewart attempted to shut the

door to her bedroom and Agent Perry advised Stewart to leave her door open and that he was going to be present while Stewart was with the packages containing the money.

20. Agent Perry informed Stewart that he was going to search her bedroom. Agent Perry entered her bedroom to make sure that she did not have any other form of luggage or contraband inside of her bedroom. Stewart stepped out of the bedroom and Agent Perry searched the bedroom with negative results for other forms of luggage or contraband. Agent Perry searched Stewart's other forms of luggage again, which revealed a ribbon and tape that matched the ribbon and tape of the tissue wrapped bundles and large package in Stewart's luggage. Agent Perry opened up the large package which revealed a large heat-sealed bundle of money wrapped in various rubber- bands. Agent Perry knew from his experience that the packaging and rubber-band wrapped bundles were consistent with other bundles of money that Agent Perry had observed in the past which were involved in the illegal narcotics business.

21. Agent Perry informed Stewart that the various bundles of money would be seized as drug proceeds. Agent Perry obtained various photographs of Stewart and the packages containing the money inside of Stewart's bedroom. Agent Perry and TFO Seth Chavez filled out a personal property receipt for the unknown amount of United States currency and proved a copy to Stewart. Agent Perry explained the process of filing a claim for the money that was being seized. Agent Perry and TFO Chavez sealed the cash in two SSEEs in the presence of Stewart. They signed the top portion of the SSEE's prior to sealing them.

22. Agent Perry and TFO Chavez transported the currency to the DEA and placed it into a temporary storage vault.

23. On February 6, 2018, TFO F. Chavez and Agent Long removed the currency from the temporary storage vault. TFO Jason Franklin deployed his trained and certified drug

detection canine. The canine alerted positively for the odor of illegal controlled substance on the currency.

On February 6, 2018, TFO F. Chavez and TFO Davis transported the currency to Loomis, incorporated for an official count. The currency totalled $68,790.

### FIRST CLAIM FOR RELIEF

24. The United States incorporates by reference the allegations in paragraphs 1 through 24 as though fully set forth.

25. Title 21, United States Code, Section 881(a)(6) subjects to forfeiture "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

26. Defendant Currency was furnished, or intended to be furnished, in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act and is thus subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

### SECOND CLAIM FOR RELIEF

27. The United States incorporates by reference the allegations in paragraphs 1 through 24 as though fully set forth.

28. Title 18, United States Code, Section 981(a)(1)(C) provides, in part, for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to an offense constituting a "specific unlawful activity" (SUA) as defined in 18 U.S.C. § 1956(c)(7), or conspiracy to commit such offense.

29.  18 U.S.C. § 1952 prohibits interstate and foreign travel or transportation with the intent to (1) distribute the proceeds of any unlawful activity; (2) commit any crime of violence to further any unlawful activity; or (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity.  Unlawful activity is defined in 18 U.S.C. § 1952(b).

30.  Defendant Currency is the proceeds of a violation of 18 U.S.C. § 1952 or is the proceeds traceable to such property and, is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE: Plaintiff seeks arrest of Defendant Currency and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant Currency, costs and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

STEPHEN R. KOTZ
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274

## 28 U.S.C. § 1746 Declaration

I am a Special Agent with the Drug Enforcement Administration who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: 06-14-2018

_____
Jarrell W. Perry, Special Agent
Drug Enforcement Administration

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
$68,790.00 IN UNITED STATES CURRENCY

(b) County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question *(U.S. Government Not a Party)*
[ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury – Medical Malpractice

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**TORTS — PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**PRISONER PETITIONS — Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [X] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6)

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 6/18/2018

SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____